UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

David H. Overstreet,

    Petitioner,

v.

Warden Edwin C. Voorhies, Jr.,

    Respondent.

CASE NO.  1:005cv34

Judge Michael R. Barrett

## ORDER

Petitioner Overstreet filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 19, 2005 (Doc. 1).  Overstreet seeks relief from the sentence that Ohio imposed following his conviction on one count of kidnapping and one count of aggravated robbery (Id.).  Overstreet was sentenced to two consecutive 10-year terms of imprisonment.  Respondent filed an "Answer/Return of Writ" (Doc. 10) as well as the manually-filed transcript of the state trial proceedings (Doc. 11).

On September 26, 2006, Magistrate Judge Hogan filed a Report and Recommendation (hereinafter, the "Report") (Doc. 15) that recommended the Court (1) deny Overstreet's petition for a federal writ of habeas corpus; (2) not issue a certificate of appealability; and (3) certify pursuant to 28 U.S.C. §1915(a)(3) that an appeal of this Order would not be taken in "good faith" and deny petitioner leave to appeal *in forma pauperis.* The Petitioner objects to the Report (Doc. 24).  Respondent filed a response to the Petitioner's Objections and two notices of supplemental authority (Docs. 25, 26 and 27).  As set forth in the Report, Edwin C. Voorhies, Jr. is the current Warden of the Southern Ohio Correctional Facility (SOCF), where Petitioner is incarcerated, and has been

substituted as the proper party. For the reasons provided below, the Court ADOPTS the Magistrate Judge's Report and Recommendation.

I. Background

On July 22, 2002, the Hamilton County Grand Jury returned an indictment charging Petitioner Overstreet with one count of kidnapping in violation of Ohio Rev. Code §2905.01(A)(3) and one count of aggravated robbery in violation of Ohio Rev. Code §2911.01(A)(1) (Doc. 10, Ex. A). Prior to trial, Petitioner's counsel[1] filed a motion to suppress the identification testimony, as well as motions to suppress statements and to exclude certain photographs (Doc. 10, Exs. F-H). On the day the trial was scheduled to begin, December 2, 2002, Petitioner indicated that he wanted his counsel dismissed and that he would represent himself (Doc. 11, Tr. of Dec. 2, 2002 hearing). On December 12, 2002 a hearing was held on the pending motions to suppress identification testimony. This motion was overruled and the trial began. After the trial, a jury found Petitioner Overstreet guilty of one count of kidnapping and one count of aggravated robbery (Doc. 10, Ex. I). Petitioner was sentenced on December 20, 2002 to two consecutive ten year terms (Id.).

The underlying facts that served as the basis for Petitioner's conviction, which the Magistrate Judge's Report more fully summarizes, was that the Petitioner was a passenger in a vehicle that was being driven by the victim.[2] At some point, Petitioner's co-defendant, Jay Sain who was in the back seat, grabbed the victim from behind and restrained him.

---

[1] This was Petitioner's second attorney, as his prior counsel was allowed to withdraw per Petitioner's request.

[2] These facts are set forth in the Ohio Court of Appeals decision overruling petitioner's claims challenging the sufficiency and weight of the evidence. These facts are presumed correct under 28 U.S.C. §2254(e)(1).

Petitioner then held what the victim believed to be a knife to the victim's throat. The victim was ordered to stop the car. Petitioner and Sain then took the victim out of the car, began punching him, then threw him into the trunk. Petitioner and Sain proceeded to drive around for a few hours with the victim still in the trunk. The victim overheard Petitioner and Sain discussing their plans to dispose of the car and the victim in the Ohio River. The victim tried to pry open the trunk and to disconnect the taillights in the hope that a police officer would pull the car over. These attempts were unsuccessful. At one point during the ordeal, Petitioner and Sain stopped the car and began to beat the victim again. They ripped his shirt from his body, bound his hands and feet, and gagged him. After driving around for another hour or so the car malfunctioned and stopped on the side of the highway at which point Petitioner and Sain left the car with the victim still in the trunk. After waiting until he felt sure the two men had left, the victim kicked out the back seat of the car and escaped from the trunk. (Doc. 10, Ex J).

As the Report more fully discusses, Petitioner appealed to the Court of Appeals, First Appellate District and then to the Ohio Supreme Court. On January 19, 2005, Petitioner filed the instant petition for a writ of habeas corpus, in which he raises the following four grounds for relief:

> Ground One: The Trial court denied Petitioner his right under the Sixth Amendment to the assistance of counsel by accepting a waiver of counsel that was not knowingly, voluntarily and intelligently made.
>
> Ground Two: Petitioner was denied due process and the effective assistance of counsel in that his trial attorney did not file a suggestion of incompetency or a plea of not guilty by reason on insanity.
>
> Ground Three: Petitioner was denied his due process right to a fair trial, in that, the trial court did not suppress identification evidence that resulted from impermissible suggestive procedure.

> Ground Four: Petitioner's sentence to twenty years was imposed in violation of due process because it was excessive under the statutory sentencing guidelines for Ohio, i.e., O.R.C. §§ 2929.11 through 2929.14 and 2929.19, and was based upon factors outside the guidelines.

(Doc. 1).

Respondent argues that Petitioner's third and fourth grounds for relief are not cognizable to the extent Petitioner alleges error under state law and any federal constitutional claim is waived due to Petitioner's procedural default in the state courts (Doc. 10, pp. 8-18). Respondent further argues that Petitioner's claims for relief should be denied as lacking in merit (Doc. 10, pp. 18-38).

II. Legal Standard

When objections are received to a magistrate judge's Report and Recommendation on a dispositive matter, the assigned district judge "shall make a de novo determination...of any portion of the magistrate judge's disposition to which specific written objection has been made...." Fed. R. Civ. P. 72(b). After review, the district judge "may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id; see also* 28 U.S.C. 636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs the standards of review for state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). See also *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller*, 269 F.3d at 614 (internal quotations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389). Meanwhile, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 1523. The Sixth Circuit has held that, even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000). Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous. See 28 U.S.C. § 2254(e)(1).

III. Analysis

    A.    Ground Four: Petitioner's sentence to twenty years was imposed in violation of due process because it was excessive under the statutory sentencing

>   guidelines for Ohio, i.e., O.R.C. §§ 2929.11 through 2929.14 and 2929.19, and was based upon factors outside the guidelines.

Petitioner argues at Ground Four of the petition that the maximum sentences totaling twenty years imposed by the trial court violate his due process because it was excessive under the statutory sentencing guidelines for Ohio and was based on factors outside the guidelines. The Report recommends that the Court is precluded from reviewing this claim to the extent Petitioner contends he is entitled to relief based on a violation of the State's statutory sentencing guidelines. The Court agrees, as it is limited to challenges that violate the Constitution, laws or treaties of the United States. See 28 U.S.C. §2254(a). Although couched in a due process argument, this Court would have to examine Ohio case law and the Ohio Revised Code to determine if Petitioner's sentence of the maximum term of imprisonment permitted by the guidelines was in err. See 28 U.S.C. §2254(a); *Wilcox v. Littlefield,* 1995 U.S. App. LEXIS 4724 at *5 (6th Cir. Mar. 8, 1995)(citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988). Therefore, the Court can only consider whether the maximum sentence imposed equates to a violation of Petitioner's federal constitutional right to due process.

However, this claim must fail as Petitioner failed to fairly present this claim as one of a federal constitutional claim to the state courts. States bear the same obligation to protect the constitutional rights of criminal defendants as do federal courts. In order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 469 U.S. 4, 6 (1982)(per curiam). Since the petitioner can no longer present his claims to the state courts, then he

has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate that there was a procedural default, the cause for the procedural default, and actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 129, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). The prejudice must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 172, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

Petitioner argues, in his objections, that he could not have brought this claim before the State Court since the case of *State v. Foster* (2006), 109 Ohio St.3d1, was not decided until after this matter was filed. The Ohio Supreme Court, in *Foster,* held that Ohio's sentencing statute violated Defendants' Sixth Amendment right to a jury trial. *See State v. Foster*, 109 Ohio St. 3d 1, 2006 Ohio 856, 845 N.E.2d 470 (2006). However, as Petitioner correctly points out, *Foster* is well grounded in *Apprendi v. New Jeresey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Respondent points out that there was no reason that Petitioner could not have raised this issue on his direct appeal relying on *Apprendi*. The Court agrees. Because Petitioner did not raise this constitutional claim on direct appeal, Ground four is procedurally defaulted and can not be raised in this *habeas corpus* review. *See also Furlow v. Moore*, No. 3:06cv108 (S.D. Ohio, Jan. 25, 2007).

    B.    Ground One: The Trial court denied Petitioner his right under the Sixth Amendment to the assistance of counsel by accepting a waiver of counsel that was not knowingly, voluntarily and intelligently made.

7

It is well settled that (1) courts should indulge every reasonable presumption against the waiver of the fundamental constitutional rights and (2) the determination of whether an intelligent waiver of counsel has occurred depends upon the particular facts and circumstances of each case. *See Johnson v. Zerbst*, 304 U.S. 458, 462 (1938); *Faretta v. California*, 422 U.S. 806, 835 (1975).  The *Faretta* Court held that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (1975) *citing Adams v. United States ex rel. McCann*, 317 U.S. at 279.  The Ohio Court of Appeals, in its prior decision in this matter, stated that "[i]n order to establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right."  Then Court went on to state that a trial court "should candidly and thoroughly discuss with the defendant 'the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" (Doc. 10, Ex. L, p2).

Petitioner argues that the trial court did not independently determine if the Petitioner understood the nature of the charges and the available defenses and trial strategies but that it was his attorney who made those inquiries and represented to the Court what she had done so.  Respondent counters that Petitioner cites no case law to support his position and, more importantly, that the burden of proof rests upon Petitioner to establish

that he did not competently and intelligently waive his constitutional right to the assistance of counsel. Respondent further points out that "no clearly established federal law, as determined by the Supreme Court, requires a specific colloquy to determine whether a defendant's waiver is made with "open eyes". (Doc. 25, p4 citing *Mack v. Holt,* No. 01-1155/01-1177, 62 Fed. Appx. 557, 580 (6th Cir. 2003)*; Beatty v. Caruso,* No. 01-1292, 62 Fed. Appx. 945, 950 (6th Cir. 2003)).

This Court finds, as did the Magistrate Judge, the Court of Appeals, and the trial court, that Petitioner made a knowing, intelligent and voluntary waiver of his right to be represented by counsel. Had the representation by Petitioner's counsel to the Court been the only conversation that took place, this Court may have some concerns. However, the trial court also discussed Petitioner's request to proceed *pro se* with Petitioner.

The trial court informed Petitioner that his counsel was good and that he should listen to her. The court went on to state, "I don't know if you're guilty or not, but you face 20 years. You face 20 years on this because you have a prior, you got two numbers." The Court went on, "This would be your third number. You face 20 years on a conviction. ..." The Petitioner then requested alcohol and drug treatment to which the Court repeatedly informed him that he was not eligible. The Court went on to state, "The only issue is this: Whether you get 20 years, whether you walk out of here [on an acquittal], or take the deal for four. That's your alternatives. That's the deal." The Petitioner responded, "I rather get found guilty, get 20 years in prison. I don't want to do four years, ten years, come home and have the same problems. I don't want to do it." He continued, "I would rather represent myself. I'll go pro se right now and represent myself." The Court then repeatedly advised against Petitioner acting pro se. (Doc. 10, Ex. L, Tr. Of December 2, 2002

9

hearing).

Based upon the above, the Court finds Petitioner's waiver of counsel to be knowing, intelligent and voluntary.

> C. Ground Two: Petitioner was denied due process and the effective assistance of counsel in that his trial attorney did not file a suggestion of incompetency or a plea of not guilty by reason on insanity.

The Report correctly sets forth the well-settled law as it pertains to a constitutional claim of ineffective assistance of counsel under the Sixth Amendment. In order to establish such a claim, a petitioner must demonstrate: (1) his attorney made such serious errors she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner agrees that this is the proper standard. The Court must also look to O.R.C. §2945.37(G) wherein a defendant is deemed legally incompetent if he is "incapable of understanding the nature and objective of the proceedings against [him] or of assisting in the ...defense." *State v. Tibbetts*, 749 N.E.2d 226, 250 (Ohio 2001), *cert denied*, 534 U.S. 1144 (2002). In addition, a person is presumed to be competent and is not rendered incompetent merely because he is mentally ill or receiving psychotropic medication. O.R.C. §2945.37(F). Furthermore, O.R.C. §2901.01(A)(14) provides that the insantiy defense is established by proof that the defendant "did not know as a result of a severe mental disease or defect , the wrongfulness of [his] acts." *Tibbetts*, 749 N.E.2d at 251.

The Magistrate Judge found that "defense counsel would have no reasoned basis to conclude that petitioner was either incompetent to stand trial or incapable of understanding the wrongfulness of his acts simply based on her concern about petitioner's

anger and self-destructive tendencies or her knowledge that petitioner had seen a psychologist ans was recommended for hospitalization." (Doc. 15, p19). Petitioner objected to this finding, arguing that the Magistrate Judge placed "the cart before the horse." (Doc. 24, p8). Petitioner argues that had such a suggestion of incompetency or plea of insanity been filed that a "complete battery of psychologicals would have been initiated." (Id.) Petitioner then argues that only after such tests were performed could evidence of Petitioner's mental status be resolved. Petitioner also argues that had a suggestion of incompetency or plea of insanity been filed that the Court would not have allowed Petitioner to represent himself.

Despite Petitioner's assertions to the contrary the status of the law is not that counsel should file a suggestion of incompetency or plea of insanity and then wait until the results are received to determine if such filings were necessary. Instead, there has to be a reason to file such documents with the court. Here, as properly decided by the Magistrate Judge in the Report, there was no evidence that Petitioner did not understand the nature and objective of the proceedings. In fact, it is clear from his statements to the trial court that he did understand. Furthermore, there is no evidence that Petitioner did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts. Based upon the above findings, this Court can not find that his attorney made such a serious error that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Nor can the Court find that his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result.

> D. Ground Three: Petitioner was denied his due process right to a fair trial, in that, the trial court did not suppress identification evidence that resulted from impermissible suggestive procedure.

11

Prior to Petitioner acting pro se, his counsel filed a motion to suppress the identification of Petitioner arguing that the identification was the result of an impermissible suggestive procedure.[3] Petitioner argued that by the victim's mother displaying a single photograph of Petitioner to the victim as the probable suspect forever rendered the victim incapable of making an independent identification of his assailant, thus, arguing that the police photo lineup was unduly suggestive as well as the in court identification. (Doc. 24, p, 10-11).

The facts clearly set forth that the victim knew is attacker, that he voluntarily offered to give Petitioner and his co-defendant a ride, and that he knew him only as "Scrooge". After some phone calls were placed by the victim, the victim was able to learn the true identity of "Scrooge." The victim learned that "Scrooge" was David Overstreet. Upon learning this information, the victim's mother obtained a photograph of David Overstreet whom the victim identified as his attacker. The victim then went to the police with the photograph and name of his attacker. Officer Witherell subsequently presented a photographic lineup to the victim that included a picture of the Petitioner that was different than the one the victim had previously seen. The victim properly identified Petitioner as his attacker. The victim also identified the Petitioner during the criminal trial. (Doc. 11, Vol. III, pp157-158; 167; 175-179, 275-276).

A conviction based on identification testimony that follows a pretrial identification violates due process when "the pretrial identification procedure is so 'impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"

---

[3]This motion was heard after Petitioner's decision to proceed pro se.

*Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). The Court must engage in a two-step analysis when determining whether the Petitioner's right to due process has been violated as a result of a pretrial identification procedure: (1) is the procedure unduly suggestive and (2) under the "totality of the circumstances" was the trial identification nevertheless reliable. *Ledbettter*, 35 F. 3d at 1070-1071. The burden is on the Petitioner to prove the that the procedure was unduly suggestive. *Id.* at 1071.

The Sixth Circuit has rejected the argument relied on by the Ohio courts in this case that undue suggestiveness cannot be found in the absence of impropriety on the part of the police. *See Thigpen v. Cory*, 804 F.2d 893, (6th Cir. 1986) *cert. denied*, 482 U.S. 918 (1987). Therefore, even though Officer Witherell did not act improperly, the identification can still be unduly suggestive. Had the victim not have had an opportunity to know his attacker prior to the crime, the Court might be inclined to agree with Petitioner that the pretrial identification was unduly suggestive; however, the facts of this case demonstrate otherwise. Taking the evidence as a whole, the Court finds that Petitioner failed to meet his burden and that even if he had met his burden, the Court finds the identification to be reliable.

IV. Conclusion

For the reasons provided below, the Court ADOPTS the Magistrate Judge's Report and Recommendation and DENIES the Petitioner's requests for relief.

**IT IS SO ORDERED.**

                                                        *s/Michael R. Barrett*
                                                        Michael R. Barrett, Judge
                                                        United States District Court